UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:

## 00 - 6199

FORD MOTOR CREDIT COMPANY,
                    Plaintiff,

## CIV - GRAHAM

                                    MAGISTRATE JUDGE

v.

**TRIAL BY JURY**
**DEMANDED**                        TURNOFF

THOMAS BRONKOVIC,
                    Pro Se Defendant.

------------------------------------

### DEFENDANT'S COMBINED MOTION, DECLARATION AND MEMORANDUM
### OF LAW TO DISMISS, TRANSFER, CONSOLIDATE OR STAY THE ACTION
### DUE TO MORE COMPREHENSIVE LITIGATION IN THE USDC MDFL IN ORLANDO

Pro Se Defendant, Thomas Bronkovic ("BRONKOVIC") files his
Combined Motion, Declaration and Memorandum and as grounds
therefore asserts:

1.    This action seeks contract damages while alleging
compliance with, inter alia, the Fair Credit Reporting Act
("FCRA")[15 U.S.C. §§ 1681 et seq.], the Federal Debt Collection
Practices Act ("FDCPA") [15 U.S.C. § 1692] and the Federal
Consumer Leasing Act ("FCLA") [15 U.S.C. §§ 1601 et seq.].

2.    This action is brought pursuant to 15 U.S.C. §§ 1681 et
seq., 15 U.S.C. § 1692, 15 U.S. §§ 1601 et seq., and 28 U.S.C. §
1331 and this Court has ORIGINAL FEDERAL jurisdiction of the
claim herein pursuant to the provisions of 15 U.S.C. §§ 1681 et
seq., 15 U.S.C.§ 1681(p), 15 U.S.C. § 1692, 15 U.S.C. §
1692(k)(d), 15 U.S. §§ 1601 et seq., 15 U.S.C. § 1667(d)(c) and
28 U.S.C. § 1331 [Federal Question].



1

3.    There is a pending related case in the United States District Court - Middle District of Florida - Orlando Division under Case Number 6:00-CV-151-Orl-19-C in the case styled "Thomas Bronkovic v. Ford Motor Credit Company". (**SEE ATTACHMENT TO NOTICE OF REMOVAL**).

4.    **The Orlando Federal Court case seeks to adjudicate ALL OF THE DISPUTES between BRONKOVIC and FMCC** under the FCRA, FDCPA, FCLA, UCC and  RICO [18 U.S.C. § 1961 et seq.], **including those claims set forth in this removed state court action.**

5.    All of the facts and documents contained in the attached Orlando Federal Court case against FMCC by BRONKOVIC are realleged by reference as if specifically set forth at length herein.

6.    BRONKOVIC's Orlando Federal Court Complaint seeks, inter alia, a declaratory determination as to whether FMCC complied with its obligations under various Acts of Congress including, but not limited to, the FCRA, FDCPA, UCC and the FCLA, the appropriate damages and penalties to be imposed against FMCC and the amount and validity of FMCC's claims under 6 different transactions.

7.    Thus, this removed action involves only 1 of 6 transactions between BRONKOVIC and FMCC while BRONKOVIC's Orlando Federal Court Complaint seeks to litigate any and all disputes involving the 6 separate transactions.

8.    FMCC intends to commence 2 additional other lawsuits  [on 2 other transactions not part of the removed action] to maliciously and unreasonably multiply proceedings, harass and drag BRONKOVIC into this inconvenient forum in the Southern District of Florida.

9.   BRONKOVIC's Orlando Federal Court Complaint alleges **HUNDREDS** of specific violations of the FCRA, FDCPA, FCLA, UCC and RICO.

10.  Any one of such violations, if proven by BRONKOVIC, constitutes an actual BAR and PROHIBITION of collection efforts by FMCC, including the commencement of the removed state court proceeding by FMCC.

11.  More importantly, for almost 2 years now, BRONKOVIC has executed his statuatory rights under the FCRA, FDCPA, FCLA and the UCC, all of which were maliciously violated by FMCC.

12.  BRONKOVIC was the first to ask for relief under the FCRA, FDCPA and FCLA by written notice sent to and received by FMCC during the last 23 months.

13.  BRONKOVIC is the first to seek a remedy, almost 2 years ago, due to the violations by FMCC and its Debt Collectors.

14.  FMCC's premature removed action was a malicious attempt to evade such acts of Congress and to retaliate against BRONKOVIC for exercising his rights under such Acts and for sending extensive complaints to credit reporting agencies, the Federal Trade Commission, the Attorney Generals of Florida and Texas and other regulatory agencies, including the president of FMCC.

15.  FMCC continues to be investigated by the State of Florida for criminal racketeering under Florida Statutes § 895 yet the State of Florida continues to permit FMCC to operate with impunity to continue the criminal acts documented in BRONKOVIC's Orlando Federal Court Complaint.

16.  At a minimum, this action should be stayed pending determination by the State of Florida's FS § 895 racketeering criminal investigation since the State of Florida claims a privilege to data refusing to release any data to litigants.

17.  Thus, this Court is faced with various options including the option to DISMISS, TRANSFER TO THE COVENIENT FEDERAL COURT FORUM IN ORLANDO, CONSOLIDATE, STRIKE or STAY the South Florida case or declare it null and void, ab initio.

18.  Any one of the options are appropriate for this Court, based on the clear reading of the Orlando Federal Court Complaint, but a TRANSFER may be most appropriate.

19.  This Court may TRANSFER THE ACTION TO Orlando Federal Court and let U.S. District Judge FAWSETT consider CONSOLIDATION, DISMISSAL and a STAY of the proceedings.

20.  BRONKOVIC has resided in the Middle District of Florida since 1994 and BRONKOVIC has no contacts with the Southern District of Florida to permit the FMCC to sue BRONKOVIC there.

21.  Pursuant to FRCP 12(b)(2) Lack of Jurisdiction over the Person and (3) Improper Venue, BRONKOVIC seeks dismissal and/or transfer to a convenient forum.

22.  BRONKOVIC also seeks to dismiss the action pursuant to FRCP 12(b)(6) Failure to State a Cause of Action since FMCC was BARRED and PROHIBITED from commencing this action for failing to comply with the FCRA, FDCPA, FCLA, UCC and RICO.

23.  In addition to operating nationwide, FMCC operates in the Middle District of Florida maintaining its principal office in such District in Maitland, Orange County, Florida about 10 miles from the Orlando Federal Courthouse.

24.  With all leases involving FMCC, the lessee has the stated and well practiced option of dealing with the FMCC office or dealer closest to the FUTURE residence of lessee.

25.  Thus, FMCC is limited to bringing any action against BRONKOVIC in Orange County, Florida.

4

26.  BRONKOVIC is thus not subject to personal jurisdiction within the Southern District of Florida, mandating dismissal or transfer to the Orlando Federal Court.

27.  Venue is improper in this Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and the case should be dismissed or, if the case is not dismissed, alternatively transferred under 28 U.S.C. § 1404(a) which states in pertinent part: "For the convenience of the parties and witnesses, and the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28.  Private interest and public interest factors support a change of venue.

29.  The standard for change of venue under the common law concept of **forum non-conveniens** was established in **Gulf Oil Corp. v. Gilbert**, 330 U.S. 501 (1946). The same standard applies to 28 U.S.C. § 1404(a).

30.  The Courts are more liberal in granting a § 1404(a) motion because, if granted, the action will be transferred rather than dismissed under the doctrine of forum-non conveniens.  **Norwood v. Kirkpatrick**, 349 U.S. 29, 32 (1955).

31.  The public and private interest factors to be weighed are set forth in **Gulf** at 508.

32.  In applying the **Gulf Oil** standard, the 11th Circuit has ruled that the District Court must first ascertain whether the alternative forum is a viable forum.  **C.A. LaSequridad v. Transytur Line**, 707 F.2d 1304, 1307 (11th Cir. 1983).

33.  Here, the Middle District of Florida possesses jurisdiction over the entire dispute, including this action, by virtue of the remedies taken pursuant to the FCRA, FDCPA, FCLA, UCC and RICO in the pending Orlando Federal Court case.

5

34.    The acts or failure to perform under the FCRA, FDCPA,
FCLA and UCC occurred in the Middle District of Florida.

35.    Many of BRONKOVIC's complaints under the FCRA, FDCPA and
FCLA originated from Orlando and were directed to FMCC thru
credit reporting agencies in downtown Orlando [Credit Data
Services, Inc. - contract servicer of EXPERIAN in Florida] or
downtown Tampa  [Merchants Association Credit Bureau, Inc. -
servicer of Trans Union in Florida].

36.    Most of the appropriate independent witnesses are thus
located in the Middle District of Florida, including BRONKOVIC.

37.    A significant factor is the location of independent
witnesses.

38.    Since the independent witnesses of the credit reporting
agencies will establish which disputes were filed by BRONKOVIC
against data reported by FMCC and what responses were received,
the it is more appropriate that the action be heard in the
Middle District of Florida for the convenience of credit
reporting agencies.

39.    Moreover, BRONKOVIC has a pending Orlando Federal Court
case in the Middle District of Florida which will dispose of the
entire removed state court case.

40.    Public and private interest factors, therefore, indicate
that Orlando is a more appropriate forum for this action.

41.    Other important factors for the Court to consider are the
applicable state and federal law and the harassment of BRONKOVIC
by FMCC.

42.    The applicable law in the action is Federal Law under the
FCRA, FDCPA, FCLA and RICO and UCC.

43.    It is public record that the State of Florida has alleged
a pattern of racketeering under FS § 895 in leases by FMCC yet

the The State of Florida has failed to protect the public as
required.

44.  It is also clear that the Florida State Courts have not
taken any action to prevent the use of state courts to
facilitate the racketeering by FMCC.

45.  It is more appropriate for a Orlando Federal Court to
apply Federal Acts of Congress than the lowest level Florida
State Court.

46.  Moreover, any disposition by a Florida state court would
not be binding on U.S. District Courts anywhere in this Circuit.

47.  An additional factor for the Court to consider is the
harassment of BRONKOVIC by FMCC for trying to drag BRONKOVIC
into an inconvenient forum in multiple lawsuit filings.

48.  Moreover, the Florida State Court does not have
jurisdiction to adjudicate BRONKOVIC's claims, setoffs,
counterclaims or issue the required declaratory relief.

49.  Thus, multijurisdictional litigation is imminent if this
case is not transferred, consolidated, dismissed, stricken or
stayed.

50.  FMCC is using its presence in South Florida to harass
BRONKOVIC by engaging in litigation in this distant unrelated
forum which has been BARRED and PROHIBITED by operation of law
as stated in BRONKOVIC's Orlando Federal Complaint.

51.  For the Southern District of Florida to exercise
personal jurisdiction over non-resident BRONKOVIC, sufficient
minimum contacts with Southern Florida must be present to
satisfy Constitutional due process requirements. **International
Shoe Company v. Washington**, 326 U.S. 310, 316 (1945); **Williams
Elec. Co., Inc. v. Honeywell, Inc.**, 854 F.2d 389, 391 (11th
Cir.1988).

52.   FMCC bears the burden of a prima facie showing of facts on which jurisdiction is based.

53.   The two-part analysis required under **International Shoe** requires the Court to determine whether BRONKOVIC purposely established minimum contacts with Southern Florida and, if such minimum contacts do exist, the Court must determine whether jurisdiction would offend traditional notions of fair play and substantial justice. **Williams** at 392.

54.   A minimum contacts analysis must consider whether there is specific or general jurisdiction.

55.   General jurisdiction requires "continuous and systematic" contacts with the Southern District of Florida.

56.    FMCC's Complaint is devoid of allegations of such contacts and such contacts do not exist.

57.   Since I have no ties to South Florida at all, there has been no continuous and systematic contact with South Florida.

58.   FMCC's Complaint alleges merely a failure to make payment of bills sent to BRONKOVIC in Orlando.

59.   Such failure to pay bills sent by FMCC from out of state does not satisfy FMCC's burden of proving its forum choice in South Florida was justified.

60.   For specific jurisdiction, the Court must look at contacts with the forum that are related to specific cause of action.

61.   Again, FMCC's Complaint is devoid of allegations of contacts with South Florida over the payment dispute.

62.   BRONKOVIC has not purposely directed activities to South Florida to enable BRONKOVIC to be sued in such non convenient South Florida forum. **Burger King Corp. v. Rudzewicz**, 471 U.S. 462 (1985).

63.    In 1989, the Florida Supreme Court, analizing the aforesaid United States Supreme Court cases, found that "we do not believe that the mere failure to pay money in Florida, standing alone, would suffice to obtain jurisdiction over a non-resident defendant." **Venetian Salami Co. v. Parthenais**, 554 So.2d 499 (Fla. 1989).

64.    Specific jurisdiction does not exist.

65.    The Federal Court in the Middle District of Florida is an appropriate forum as FMCC is also a defendant in a possibly related class action case filed under Case No.: 3:96-CV-00447 in the case styled "Higginbotham vs. FMCC".

66.    It is absolutely clear that FMCC commenced the removed action in this distant non convenient forum to harass and deprive BRONKOVIC of his due process constitutional rights and to force BRONKOVIC to make repeated personal appearances in a state court to further control BRONKOVIC's finances, in further violation of BRONKOVIC's rights under the FCRA, FDCPA, FCLA, RICO and UCC.

67.    FMCC will not be prejudiced if the removed action is dismissed, consolidated, transferred, stricken, declared null and void or stayed since FMCC can have complete and further relief in the pending Orlando Federal case filed by BRONKOVIC against FMCC.

68.    FMCC's actual or threatened filing of multiple state court actions is clearly made in bad faith for an improper purposes in further violation of the aforesaid acts of Congress and FRCP 11.

69.    Should the Court choose not to dismiss, transfer or consolidate the removed action, it should curb the current multiplication of actions by staying the removed action before it.

70.   The Court should stay the instant action since the resolution of issues in the pending Orlando Federal Court between the same parties shall dispose of all of the claims in the removed action.

71.   When there is another action pending between the same parties for the same cause of action, this Court must make whatever order as justice requires, including a stay of proceedings upon such terms as are just.

72.   Since issues raised in the Orlando Federal Court case will dispose of all of the issues before the removed South Florida case, a STAY is warranted even if neither the parties, nor the claims, nor the law to be applied is identical.

73.   Thus, in **Bank of New York v. Levy**, 123 A.D.2d 589, 506 N.Y.S.2d 767 (2d Dep't 1986), the Second Department upheld the trial court's stay of the state court action by Bank of NY ("BNY") where BNY was also a defendant in prior federal action brought by a class that included the defendant's decedent.

74.   The federal action alleged massive fraud which, if proved, would preclude BNY's claim.

75.   Accordingly, even though some of the parties, claims, and laws to be applied differed, in light of the "fact that resolution of the Federal suit may encompass the plaintiff's claim herein and in view of the identity of parties and issues in both cases, it was appropriate for Special Term to stay the proceedings before it pending the outcome of the Federal Class action suit." **Id.**

76.   Here, the parties and legal issues are identical and the adjudication of the Orlando Federal Court case will entirely dispose of this instant South Florida case.

77.   Accordingly, a STAY of the removed case is MANDATORY if it is not dismissed, consolidated or transferred to Orlando.

78.   In any event a stay, transfer, dismissal or consolidation will prevent the waste of substantial resources of the parties and the courts possibly leading to conflicting decisions of fact and law.

79.   The Orlando Federal Court case can and will dispose of all issues including FMCC's claims herein.

80.   In the impossible or unlikely event that the Orlando Federal case did not resolve the claims of FMCC in this instant action, any stay imposed could be lifted and FMCC could pursue its action in the appropriate forum.

81.   Thus, this South Florida action should be stayed at a minimum unless and until the Orlando Federal Court case is adjudicated.

82.   The instant action involving one transaction between FMCC and BRONKOVIC should be stayed, consolidated, stricken, consolidated or dismissed until the Orlando Federal case involving 6 separate transactions is adjudicated.

83.   The South Florida case, included in the Orlando Federal Court case  should be stayed to "avoid duplication of effort." **Lindberg v. Home Reporter, Inc.**, 67 A.D.2d 644 (1st Dep't 1979) (staying state court derivative action pending resolution of federal court derivative action based on "substantially similar" allegations).

84.   Moreover, practical considerations, including the potential burdens on the litigants and on the court systems, and principles of judicial comity, likewise warrant the stay.

85.   In **Levy v. Pacific Eastern Corp.**, 154 Misc. 655, 656 (Sup. Ct., NY Cty. 1935), the Supreme Court for New York County stayed a derivative action brought in New York in favor of a "similar" action brought AFTERWARDS by a minority shareholder in Delaware, stating that: "It is salutary policy of the law to

discourage redundant suits, both to save the time consumed by the resultant multiplicity of actions, and to avoid the unnecessary annoyance and expense to litigants in prosecuting or defending independent suits comprehending the same subject-matter. It is accordingly well established that where a definitive ruling in one of two suits concurrently prosecuted will completely dispose of the controversy, one suit, in the absence of special circumstances, will be stayed pending the determination of the other, whether the actions are in the same jurisdiction."

86.    The **Levy** Court explained that, even though the New York action had been filed before that in Delaware, whether the New York action should be stayed depended "upon the circumstances taken all together", including: which litigation had been more active; any prejudice shown by the party opposing the stay; the burden to the defendants who would otherwise be forced to defend multiple suits; and comity for the other forum.

87.    All of these factors likewise warrant staying the instant South Florida removed case which can be disposed by the Orlando Federal court.

88.    Moreover, the South Florida case and collection of the claim has been barred by the FCRA, FDCPA, FCLA and UCC due to the filed disputes, so FMCC has no valid claim to pursue in the South Florida case.

89.    The South Florida case is illegal and in retaliation for BRONKOVIC's pursuing his rights under the FCRA, FDCPA, FCLA and UCC.

90.    BRONKOVIC promised to sue FMCC if FMCC's violations of the Acts of Congress were not corrected.

12

action will decide, based upon BRONKOVIC's exhaustive written redispute notices, if FMCC's action was prohibited.

92.    This Court is only asked to enforce the collection STAY imposed by operation of the FCRA, FDCPA, FCLA and UCC.

93.    The undisputed center of gravity of the controversy is fully contained in the Orlando Federal Court case which involves disputes involving 6 VEHICLES, rather than the 1 vehicle claimed in the instant lawsuit.

94.    FMCC's Debt Collector and attorney frivolously filed his lawsuit without ever checking to ascertain whether his clients had complied with the FCRA, FDCPA, FCLA, and UCC.

95.    In light of the State of Florida's FS § 895 racketeering investigation, FMCC's and its attorney failed to comply with their obligations under FRCP 11.

96.    Further, it is difficult to imagine what prejudcuie could be shown by FMCC in an apparent attempt to cash in on any potential attorneys fees.

97.    If the South Florida action is not stayed, transferred, consolidated or dismissed, the courts of this state will be needlessly burdened and BRONKOVIC will be forced to defend multiple identical actions in an inconvenient forum in South Florida.

98.    **Levy**, 154 Misc. at 657 stated "defendants should not be unduly harassed and subjected to unnecessary expense, nor courts needlessly occupied with redundant proceedings having no useful purpose.")

99.    In cases such as this, a stay is the proper vehicle to maintain control of litigation with the larger goals of judicial economy.

100.  **Levy**, 154 Misc. at 657 stated "where no ultimate prejudice is established, the interests of the defendants become the proper subject for the court's consideration."

101.  Staying, transferring, striking, dismissing or consolidating the South Florida action will prevent needless litigation and expense, for this Court and for the litigants, preventing possible conflicting decisions.

102.  The underlying issue in the disputes is whether FMCC violated the FCRA, FDCPA, FCLA, RICO and the UCC and whether this instant South Florida collection action is barred.

103.  The Orlando Federal Court is competent to rule on such matter to save valuable judicial time of the South Florida courts.

104.  As the **Levy** Court stated, "[w]hatever rights the plaintiffs may or may not have are not forever foreclosed; the stay granted now merely postpones their prosecution for the time being.  This court should not in the meantime engage in an unseemly race with the court for priority of decision." **Id.**  At 658, 663 (staying New York action where dispositive adjudication of similar issues in Delaware court was imminent).

105.  All in all, the prosecution of two or more actions of such common identity in separate forums involving the same parties is indefensible.

106.  FMCC's action places an undue burden on BRONKOVIC and constituted a waste of judicial energies.

107.  To require BRONKOVIC to defend numerous suits by FMCC in South Florida when FMCC can be given complete relief in the Orlando Federal Court is a waste of judicial resources and unfair to BRONKOVIC.

108.  The instant South Florida action should be stayed, transferred, stricken, dismissed or consolidated into the

14

Orlando Federal Court case to prevent that waste of resources or otherwise declared null and void for failure to comply with the FCRA, FDCPA, FCLA, RICO and UCC which are prerequisites for filing such as non payment action.

109.    Contemporaneously filed herewith is a copy of BRONKOVIC's Orlando Federal Court case which this Court can take judicial notice of pleadings filed in this Federal Circuit.

110.    Such Orlando Federal Complaint demonstrates extensive reasons why FMCC's collection activity and this South Florida lawsuit was barred by operation of laws including the following:

(a) Statuatory State Court proceedings which fail to follow and comply with the requirements of FDCPA are fatally defective mandating dismissal, entitling victims to a claim for relief against violators. **Romea v. Heiberger**, USCA 2nd Circuit Docket 98-7259 decided: December 9, 1998;

(b) BRONKOVIC started filing bona fide extensively documented disputes regarding data reported on credit reports including amounts claimed due on BRONKOVIC's 6 VEHICLE transactions with FMCC and FMCC failed to correct disputed data, report correct amounts owed and file requisite responses as required by the FCRA, FDCPA and FCLA. ¶ 26;

(c) BRONKOVIC's FCRA, FDCPA and FCLA disputes to credit reporting agencies and FMCC alleged that FMCC claimed and willfully reported inaccurate data on BRONKOVIC's credit reports for (1) inaccurate high or original credit amounts; (2) inaccurate current balances which conflicted with monthly statements of debt; (3) inaccurate or omitted terms including monthly payments and 24 month lease terms, and (4) the status of accounts, either closed, paid, dispute, voluntarily terminated or otherwise. ¶ 27-28, 34-40;

(d)  FMCC never formally responded to BRONKOVIC's billing errors
     as required by 15. U.S.C. § 1666 and FMCC forfeited any
     right to collect or proceed to collect the disputed
     obligations.  See 15 U.S.C. § 1666.a(e). ¶ 29, 41, 42;

(e) FMCC maliciously reported to Credit Reporting agencies
    disputed inaccurate data barred by the FCRA and FCLA 15
    U.S.C. § 1666a, without ever meeting the requirements of 15
    U.S.C. § 1666; ¶ 30;

(f) FMCC's failure to meet the requirements of 15 U.S.C. § 1666
    has enlarged the time for Plaintiff to make payments under
    any senario for at least 18 months once FMCC complies with
    its requirements of 15 U.S.C. § 1666a.(a). ¶ 31;

(g) Thus, FMCC has no valid or enforceable collection, lawsuit,
    repossession or other remedy unless and until FMCC complies
    with the above acts and gives such additional time to make
    payments; ¶ 32;

(h) Any collection, negative credit reporting, notice, demand,
    lawsuit, communication by Debt Collectors, threat,
    repossession or any attempt to collect the debt disputed by
    BRONKOVIC is NULL and VOID, ab initio, by operation of law.
    ¶ 33, 43,;

(i) FMCC's attorney violated the FDCPA and offered to satisfy
    all debts in return for voluntary return of vehicles which
    BRONKOVIC accepted thereby relieving BRONKOVIC of all debt
    to FMCC;  ¶ 44, 45, 46, 47, 48, 49, 50, 51, 52;

(j) Despite FMCC's Debt Collector's offer to satisfy all Debt
    and BRONKOVIC's acceptance, FMCC continued to report
    inaccurate unreasonable, BARRED and PROHIBITED data on
    BRONKOVIC's credit reports in malicious violation of the
    FCRA, FDCPA, FCLA and RICO entitling BRONKOVIC to $1,000 for

16

each violation for demanding unearned and improper claims.;
¶ 53, 54, 55, 56, 57, 58, 59, 60;

(k) FMCC by and through its Debt Collector violated 15 U.S.C. §
1692(g) ¶ 61; 15 U.S.C. § 1692(g)(a) ¶ 62; 15 U.S.C. §
1692(g) other grounds ¶ 63; 15 U.S.C. § 1692(e)(11) ¶ 64; 15
U,S.C. § 1692(e)(5) ¶ 65; 15 U.S.C. § 1692(10) ¶ 66; 15
U.S.C. § 1692(e)(6) ¶ 67; 15 U.S.C. § 1692(e)(2) ¶ 68; 15
U.S.C. § 1692(d) ¶ 69; 15 U.S.C. § 1692(b)(2) ¶ 70; 15
U.S.C. § 1692(c)(b) ¶ 71; 15 U.S.C. § 1692(f)(6) ¶ 72;

(l) FMCC further violated FDCPA, FCLA, FCRA, UCC and RICO by
threatening and actually selling vehicles, holding BRONKOVIC
liable for a deficiency and holding a commercially
unreasonable private BARRED sale; ¶ 73-78;

(m) FMCC's purported UCC auction forming the basis of this
action was invalid since the requisite proper notices of
default, cure, sale, redemption and auction were never
provided to BRONKOVIC and any notices were defective as
premature.  ¶ 79-91;

(n) There was a stated presumption, even by FMCC's Debt
Collector, that proceeds from any sale by FMCC equal the
balance of the obligation owing. ¶ 84;

(o) The amounts claimed by FMCC are more than 6 times the
remaining payments, resulting in an RICO overcharge under
any senario. ¶  87-89;

(p) Since FMCC's purported REPOSSESSION and PRIVATE sale is
invalid, BRONKOVIC cannot be liable for lease payments or a
deficiency for unearned payments after the September 12,
1998 return of the Vehicles. ¶ 90;

(q) FMCC's leases violated the letter and intent of 15 U.S.C. §
1667a prohibiting collection based upon the facts;  ¶ 91-95;

(r) FMCC and its Debt Collectors have reviewed BRONKOVIC's credit reports at least 10 times since March 1998 after BRONKOVIC made Complaints under FCRA, FDCPA and FCLA but FMCC failed to correct billing and other errors on credit reports in malicious violation of such Acts resulting in the commencement of the Orlando Federal Court action. ¶96-103

(s) The aforesaid schemes of FMCC constitute racketeering activity entitling BRONKOVIC to 11 fold damages under state and federal RICO laws based upon the $100,000 high amounts usuriously claimed. ¶ 106;

(t) BRONKOVIC is entitled to equitable relief including declaratory and injunctive relief and punitive damages for FMCC's recklessly trampling on the rights of BRONKOVIC. ¶ 107-109;

(u) FMCC retaliated against BRONKOVIC for making Complaints to its Chief Executive and for filing Complaints with regulatory agencies trying to stop FMCC fro cheating the public. ¶ 110;

(v) Sufficient grounds exist to direct the deletion of negative data on BRONKOVIC's credit reports and to bar further collection and litigation activity by FMCC in other courts. ¶ 111-112;

111.   All of the allegations summarized above, including those specific allegations with supporting exhibits contained in the Orlando Federal Court case, convincingly demonstrates with certainty that FMCC' Complaint has failed to state a claim upon which relief can be granted mandating dismissal, pursuant to FRCP 12(b)(6), or the alternative relief requested of TRANSFER, CONSOLIDATION or a STAY.

112.   FMCC has filed its action in violation of FRCP 11 in an abundance of BAD FAITH for an improper and illegal purpose such

as to harass and maliciously violated the FCRA, FDCPA, FCLA, UCC and RICO.

113.   Based upon the aforesaid violations of the FCRA, FDCPA, FCLA, UCC and RICO, it is clear that collection activity of FMCC was premature, BARRED and PROHIBITED, such that this lawsuit is a nullity and FMCC cannot be granted any relief under any set of facts that could be proved consistent with the allegations. **See Conley v. Gibson**, 355 US 41, 45-46, 2 L Ed 2d 80, 78 S Ct 99 (1957).

114.   Upon information and belief, FMCC has been a defendant in one or more actions which litigation would bar FMCC's claims under the doctrines or res judicata, collateral estoppel or issue preclusion.

115.   Twenty-one days notice is given that if FMCC fails to voluntarily withdraw its action with prejudice, BRONKOVIC will present an appropriate motion to the Court for Rule 11 sanctions.

116.   BRONKOVIC also requests that this Court exercise its powers and discretion by sua sponte punishing FMCC and its counsel for its frivolous and illegal conduct.

117.   No previous request has been made for the relief sought herein from this or any other Court except as otherwise stated herein.

I DECLARE under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WHEREFORE, Pro Se Defendant, Thomas Bronkovic, respectfully requests that this Court enter its Order dismissing Plaintiff's Complaint pursuant to FRCP 12(b) for (2) lack of jurisdiction over the person, (3) improper venue, and (6) failure to state a

claim upon which relief can be granted, or, alternatively, (a)
transferring the action to the Middle District of Florida, (b)
staying the action until final disposition of the pending case
in the Orlando Federal Court or (c) consolidating the case into
the Orlando Federal Court case with the consent of Orlando U.S.
District Judge Fawsett and/or for such other and further relief
that this Court may deem just and proper including sua sponte
FRCP 11 sanctions against Plaintiff, Ford Motor Credit Company,
and its counsel for maliciously filing this frivolous lawsuit.


I HEREBY CERTIFY that a copy of the foregoing has been furnished
by U.S. Mail this _8th_ day of February, 2000 to

(1)  William A. Ingraham, Jr. P.A. (Counsel for Plaintiff)
3050 Biscayne Blvd, Suite 400
Miami, Florida 33137
Attn: William A. Ingraham, Jr., Esq.

(2)  Clerk of the County Court In and For Broward County
County Courthouse
3550 Hollywood Blvd.
Hollwood, Florida  33021

(3)  Clerk's Office
United States District Court SDFL
301 N. Miami Avenue
Miami, Florida   33128


                    Respectfully Submitted,

                    _____
                    Thomas Bronkovic, Pro Se Defendant
                    12179 S Apopka-Vineland Rd # 604
                    Orlando, Florida   32836
                    TEL:  407 226 9168
                    FAX:  407 226 9309